IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


SHERRY LANELLE NIPP                                              PLAINTIFF


v.                          CIVIL NO. 2:17-CV-2055


NANCY A. BERRYHILL, [1] Acting Commissioner,
Social Security Administration                          DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Sherry Lanelle Nipp, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

While living in Oklahoma, Plaintiff protectively filed applications for DIB and SSI on February 22, 2011, alleging an inability to work since June 15, 2010,[2] due to problems with

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] At the December 6, 2012, hearing before the ALJ, Plaintiff amended her alleged onset date from June 15, 2010, to July 1, 2009.  (Tr. 57).  Plaintiff later filed subsequent applications, and in the most recent ALJ Opinion, the ALJ combined all applications and set an alleged onset date of June 15, 2010.  (Tr. 378).

1

her back, esophageal problems, gastroesophageal reflux disease, depression, and bipolar disorder. (Tr. 71, 75, 79, 161). For DIB purposes, Plaintiff maintained insured status through September 30, 2014. (Tr. 21, 208, 380). An administrative video hearing was held from McAlester, Oklahoma, on December 6, 2012. (Tr. 39). Plaintiff and counsel appeared via video conference from Fort Smith, Arkansas, and Bonnie M. Ward, Vocational Expert (VE), was also present. (Tr. 39-67). Both Plaintiff and Ms. Ward testified. (Tr. 39-67). The ALJ issued a written opinion dated February 28, 2013, where he found that the Plaintiff had not been under a disability within the meaning of the Social Security Act. (Tr. 32). Plaintiff subsequently appealed the decision to the Appeals Council, who declined to reverse the decision. (Tr. 1-6). Plaintiff then appealed the decision to the United States District Court for the Eastern District of Oklahoma. While Plaintiff's complaint was pending before the United States District Court, Plaintiff filed subsequent applications for DIB and SSI on September 26, 2014 and October 10, 2014, respectively, both of which were denied by hearing decision issued on November 13, 2015. (Tr. 1057). Plaintiff appealed the decision to the Appeals Council, and on March 24, 2016, the Appeals Council remanded for further consideration of evidence in the record. (Tr. 1057). On September 30, 2015, the United States District Court reversed and remanded for further proceedings. (Tr. 1039-1054).

On December 13, 2016, a hearing was held at which Plaintiff appeared with counsel and testified. (Tr. 399-425). David Elmore, Vocational Expert (VE), also testified. (Tr. 428-431). In a written opinion dated January 30, 2017, the ALJ found that the Plaintiff had the following severe impairments: obesity, degenerative disc disease, mood disorder, anxiety disorder, post-traumatic stress disorder, and a personality disorder. (Tr. 381). However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did

2

not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 381-384). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416. 967(b), except that Plaintiff can only occasionally stoop and/or crouch, and she is limited to the performance of unskilled work with only occasional contact with supervisors, coworkers, and the general public. (Tr. 384). With the help of VE testimony, the ALJ determined that Plaintiff was unable to perform her past relevant work as a certified nurse's aide (CNA) and home health aide. (Tr. 388). However, based on the Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of work as a marker and a cleaner/housekeeper. (Tr. 390). Ultimately, the ALJ concluded that the Plaintiff had not been under a disability within the meaning of the Social Security Act during the relevant time period of June 15, 2010, the alleged onset date, through January 30, 2017, the date of the ALJ's opinion. (Tr. 390).

Subsequently, Plaintiff requested a review of the hearing decision by the Appeals Council, and that request was denied on July 25, 2014. (Tr. 1-6). Plaintiff filed a Petition for Judicial Review of the matter on April 5, 2017. (Doc. 1). Both parties have submitted briefs, and this case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    Evidence Submitted:

At the hearing before the ALJ on December 6, 2012, Plaintiff testified that she was born in 1965 and had obtained a GED and her certified nurse's aide certification. (Tr. 46).

3

Plaintiff's past relevant work consisted of work as a certified nurse's aide as well as a home health aide. (Tr. 388).

Prior to the relevant time period, Plaintiff was seen by various healthcare providers for the following health issues: bronchitis, sinusitis, headaches, chest pain, chronic back pain, shoulder pain, leg pain and numbness, GERD, slow digestion, constipation, and gastroparesis. Plaintiff was treated conservatively with pain medication, and she underwent an upper endoscopic procedure and imaging of her back and shoulder.

Medical evidence during the relevant time period reflects that on October 29, 2010, Plaintiff presented at the East Texas Gastroenterology Associates where she was diagnosed with GERD and gastroparesis and provided medication refills. (Tr. 317).

On March 30, 2011, Plaintiff was seen at the Family Medical Clinic to establish care, to obtain prescription medication for pain in her back and neck, as well as numbness in her legs, and for an evaluation of her symptoms of acid reflux. (Tr. 361).

On May 10, 2011, Plaintiff underwent a Consultative Examination by Theresa Horton, Ph.D. Plaintiff reported back problems, esophageal problems, depression, and bipolar disorder. (Tr. 326). Plaintiff reported that her health conditions began to interfere with work in 2009. (Tr. 326). Plaintiff reported crying uncontrollably and that she had only about two days a week where she felt physically able to do anything around her house. (Tr. 326). Plaintiff reported that she received counseling during her previous marriage, but had not received any other mental health treatment. Plaintiff reported being able to care for her own personal hygiene and being able to cook and clean with her daughter's help. (Tr. 327). She stated that she spent a lot of time dealing with stressful family events and stated that she experienced

4

feelings of guilt and shame.  (Tr. 327).  Dr. Horton observed that Plaintiff was cooperative, walked into the appointment without assistance but with a slow and awkward gait, appeared to sit comfortably, and appeared to experience pain when rising from a seated position.  (Tr. 327). Dr. Horton opined that her thought processes were logical, organized and goal directed; her mood was predominately depressed; she was oriented to time and place; and her judgment was appropriate.  (Tr. 327).  She was diagnosed with major depressive disorder, recurrent, moderate to severe, and anxiety disorder with dependent personality traits.  (Tr. 329).  Dr. Horton concluded that Plaintiff appeared to be capable of understanding, remembering and managing simple and complex instructions and tasks, and capable of adequate social and emotional adjustment into occupational and social settings.  (Tr. 329).  She would likely, however, benefit from counseling due to her family situation.  (Tr. 329).

On May 3, 2011, Plaintiff underwent a Consultative Examination by Patrice Wagner, D.O.  Plaintiff reported chronic back pain, possibly as the result of her work as a nurse's aide. (Tr. 318).  Plaintiff reported that she believed she suffered from a nervous breakdown over the last year, that she was not able to function normally, that she did minimal household chores, that she was able to complete all ADL's independently, and that she was able to drive.  (Tr. 318).  Dr. Wagner observed that Plaintiff was cooperative, her speech was intelligible, and her thought processes were normal.  (Tr. 318).  Plaintiff's physical examination was normal, including a full ROM in her spine and a stable gait.  (Tr. 319).  Dr. Wagner assessed Plaintiff with chronic back pain, GERD, gastroparesis, depression, and bipolar disorder. (Tr. 319).  Dr. Jeffrey Watts interpreted Plaintiff's x-ray views of her lumbar spine, which showed normal alignment, preserved vertebral body heights, mild disc flattening and endplate spurring at L4-

5

5, and minimal anterior endplate spurring at L3.  Overall, Plaintiff had mild degenerative disc disease at L4-5.  (Tr. 325).

On May 18, 2011, Plaintiff presented at the Family Medical Clinic for symptoms of depression and anxiety.  (Tr. 367).

On June 6, 2011, Dr. Joy Kelley, Ph.D., a non-examining medical consultant, completed a Psychiatric Review Technique. (Tr. 331-343).  Dr. Kelley opined that the medical evidence did not support the level of limitations alleged and that Plaintiff was capable of semi-skilled work.  (Tr. 343).  In a Mental RFC Assessment, also performed by Dr. Kelley, she opined that Plaintiff could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation.  (Tr. 345-347).

On June 21, 2011, Dr. Walter W. Bell, a non-examining medical consultant, completed a Physical RFC Assessment.  (Tr. 348-356).  Dr. Bell determined that Plaintiff was capable of light work.  (Tr. 350).

On September 27, 2011, Dr. Sharon Ames-Dennard, Ph.D., affirmed the Mental RFC Assessment by Dr. Kelley.  (Tr. 359).

On October 7, 2011, Dr. Carmen Bird affirmed the Physical RFC assessment by Dr. Bell.  (Tr. 360).

On March 9, 2012, Plaintiff visited the Family Medical Clinic for symptoms of social anxiety, for which she was treated conservatively with medication.  (Tr. 368).

Plaintiff presented to the Family Medical Clinic on April 4, 2012, for a follow up after she sustained a fall.  Dr. William Willis suspected Plaintiff had a torn ligament in her knee and

6

a chipped bone in her ankle.  (Tr. 363).  Dr. Willis wanted to see previous x-ray reports and recommended a possible referral to orthopedics.  (Tr. 363).

On June 1, 2012, Plaintiff visited the Family Medical Clinic with complaints of left foot pain.  (Tr. 364).  Plaintiff requested stronger pain medication.  Plaintiff was assessed with severe arthritic changes and pain in the left knee, "possibly bone to bone."  (Tr. 364).  Clinic notes indicate that a referral to orthopedics was necessary.  (Tr. 364).  Also on that day, Plaintiff tested positive for THC.  (Tr. 896).

On August 31, 2012, Plaintiff visited Family Medical Clinic for medication refills. (Tr. 370).  Clinic notes indicate that Plaintiff was doing well and that she had seen an orthopedist. (Tr. 370).  She was assessed with joint pain secondary to severe knee disease.  (Tr. 370).

On September 10, 2012, Plaintiff visited the Family Medical Clinic for problems with nightmares, for which she was given medication.  (Tr. 371).

On December 19, 2012, Dr. Willis completed a Medical Source Statement wherein he opined that Plaintiff could sit, stand, and walk for fifteen minutes at a time during an eight-hour day, could sit and stand for forty minutes total during an eight-hour day, and could walk for twenty minutes total in an eight-hour day.  (Tr. 372).  He opined that she could rarely lift and/or carry ten pounds and never lift and/or carry more than ten pounds. (Tr. 372-373).  In addition, Plaintiff could never push/pull, work in extended position, work above shoulder level, work overhead, reach, grasp with either hand, finger with either hand, squat, crawl, stoop, crouch, kneel, balance, or climb, and could rarely bend.  (Tr. 373-374).  Dr. Willis opined that Plaintiff had marked restriction on unprotected heights and dangerous moving machinery and must completely avoid handling vibrating tools.  She was moderate limitations in the following

areas:  exposure to extremes and sudden or frequent changes in temperature and/or humidity, exposure to respiratory irritants, driving/riding in automotive equipment, exposure to high noise levels, and limitation on fine visual acuity.  (Tr. 374).  Dr. Willis stated that his objective basis for determining the limitations described in his RFC evaluation was the evidence of Plaintiff's bulging discs.  (Tr. 374).

On April 8, 2013, Dr. Robert Spray, Ph.D., completed a Psychological Evaluation where Dr. Spray noted that Plaintiff reported having done marijuana "all [her] life" and was currently seeing a drug counselor.  (Tr. 838-839).  During the mental status examination, Dr. Spray made the following observations: that Plaintiff's speech was spontaneous, but circumstantial, tangential, and pressed; that her attitude was cooperative; that she saw "traces – like you think you saw somebody walk by;" that she had racing thoughts that often distracted her; that she would cry on occasion as she awoke from sleep; that she had episodes of anxiety; that she would avoid groups of people; and that she would experience flashbacks from the abuse she suffered as a child.  (Tr. 839).  Dr. Spray's Axis I diagnostic impression was mood disorder, as well as anxiety disorder with PTSD issues, and an Axis II diagnostic impression of personality disorder, with dependent and borderline features.  (Tr. 839).  Dr. Spray assessed Plaintiff with a GAF score of 50.  (Tr. 839).

On April 22, 2013, Dr. Robert Spray, Ph.D., completed a Medical Source Statement wherein he found moderate, marked, and severe limitations in many areas.  (Tr. 840-843).

On May 2, 2013, Plaintiff presented at the Family Medical Clinic for refills on her hydrocodone and Prozac.  (Tr. 891).

On September 4, 2013, Plaintiff presented at the Family Medical Clinic with Dr. Willis for a refill of her medications for her chronic back pain.   (Tr. 889).  She was assessed with chronic pain, chronic obstructive pulmonary disease by history, gastroesophageal reflux disease, and anxiety and depression.  (Tr. 889).

On January 10, 2014, Plaintiff visited Poteau Health for a breast exam and mammography referral.  (Tr. 869).  Clinic records indicate that Plaintiff was a smoker.  (Tr. 870).  Plaintiff was referred for a diagnostic mammogram due to a breast lump or mass that was assessed.  She was also instructed to lose weight, to exercise at least three times per week for twenty minutes, and to follow a low fat, low sodium diet.  (Tr. 872).

On January 15, 2014, Plaintiff underwent a comparison mammogram at Eastern Oklahoma Medical Center, where benign findings resulted. (Tr. 867). The report also indicated that there was no change in initial BI-RADS classification and study impression. (Tr. 868).

On February 7, 2014, Plaintiff returned to Poteau Health where a referral was made for a breast biopsy.  (Tr. 874).

On February 12, 2014, Plaintiff visited the Family Medical Clinic for refills on her pain medication and for complaints of ear pain. (Tr. 888).

On February 24, 2014, Plaintiff visited Poteau Health for medication refills. (Tr. 875). She was assessed with GERD, morbid obesity, and instructed to keep her appointment for her breast biopsy. (Tr. 877).

On March 26, 2014, Plaintiff saw Dr. Wellie Adlaon for bipolar disorder, depressive disorder, and paranoia.  (Tr. 908).  Plaintiff's mediations were adjusted.  (Tr. 908).

On April 23, 2014, Dr. Adlaon assessed Plaintiff with PTSD, anxiety and depression. (Tr. 907).

On May 12, 2014, Plaintiff presented at the Family Medical Clinic for medication refills and complaints of left knee pain after sustaining a fall.  (Tr. 887).

On May 28, 2014, Plaintiff saw Dr. Adlaon for paranoia and depressive disorder, including symptoms of loss of interest, depressed mood, hopelessness and poor concentration. (Tr. 906).  Plaintiff's mental exam was normal. She was assessed with depression, anxiety, and PTSD, and her medications were adjusted.  (Tr. 906).

On June 25, 2014, Plaintiff saw Dr. Adlaon for symptoms of paranoia, agitation, impulsiveness, and resentment. (Tr. 905). Plaintiff was assessed with PTSD, depression, and anxiety and instructed to continue her medications. (Tr. 905).

Plaintiff saw Dr. Adlaon on July 23, 2014, for symptoms of depressive disorder as well as, symptoms of bipolar disorder, including insomnia, flight of ideas and racing thoughts.  (Tr. 904).

On August 18, 2014, Plaintiff visited the Family Medical Clinic for a refill of her pain medications.  She was assessed with degenerative disc disease with exacerbation after an incident over the weekend where she bent over and was unable to straighten back up.  (Tr. 885).  She was instructed to continue her current medications. (Tr. 885).

On August 27, 2014, Plaintiff saw Dr. Adlaon for symptoms of depressive disorder, including loss of interest, depressed mood, hopelessness, and poor concentration.  (Tr. 903).

Plaintiff saw Dr. Adlaon on September 24, 2014, for anxiety, depression and PTSD. Dr. Adlaon restarted her on Klonopin and started her on Prozac. (Tr. 902).

On October 29, 2014, Plaintiff saw Dr. Adlaon for her bipolar and depressive disorders where she was assessed with depression, PTSD, and anxiety.   (Tr. 956).

On November 14, 2014, Plaintiff visited Express Care with complaints of GERD and low back pain.  Her medication was refilled.  (Tr. 1262).

On November 25, 2014, Plaintiff saw Dr. Adlaon for her bipolar and depressive disorders where she was assessed with depression, PTSD, and anxiety.  (Tr. 953).

On December 9, 2014, Plaintiff underwent a Consultative Examination by Dr. Wojciech L. Dulowski.  (Tr. 924).  Dr. Dulowski noted that Plaintiff was morbidly obese with a history of depression, PTSD, history of back and neck pain, as well as a history of decreased vision and GERD.  (Tr. 924).  Dr. Dulowski noted that Plaintiff walked with some enlarged gait to the left side; had difficulty walking on heels and tiptoes on left side; but was walking without any assistive devices.  (Tr. 924).  Alignment of her cervical, thoracic, and lumbar spine were normal with some midline tenderness in the cervical and lumbar spine areas.  (Tr. 925).

On December 17, 2014, Dr. Herbert Meites, a non-examining medical consultant, performed a Physical RFC Assessment, where he determined that Plaintiff was capable of light work.  (Tr. 447, 460).

On December 23, 2014, Plaintiff underwent a second Mental Status Examination by Dr. Theresa Horton, Ph.D. (Tr. 931). Plaintiff reported that she had suffered abuse all of her life and had suffered from mental problems as well.  She reported that she coped with the stress

by working, but once unable to work, her physical ailments impacted her even more. (Tr. 931). Plaintiff reported being treated at Atoka Counseling earlier in the year and at Hartsell Psychological Services for several months. Plaintiff stated that she was currently seeing a counselor every couple of weeks. (Tr. 932). Plaintiff reported that she provided for her own personal care, though difficult; she enjoyed watching television; she enjoyed staying connected with people through her phone (with games and Facebook); and she was able to do some cooking and cleaning. Plaintiff reported having anxiety and depression all her life that was related to a history of abuse. (Tr. 932). Dr. Horton reported that Plaintiff was cooperative; walked without assistance, no unusual gait, and appeared to sit comfortably; appeared calm, socially appropriate, and comfortable; and communicated effectively. Plaintiff's thought processes were logical, organized and goal directed. (Tr. 933). Her mood was predominantly depressed and anxious; her affect was content, congruent and restricted; her judgment was appropriate; and her insight was fair. (Tr. 933). Dr. Horton concluded that Plaintiff appeared to be capable of understanding, remembering and managing most simple and complex instructions and tasks, though likely would not adapt well into areas that were densely populated and/or fast paced. (Tr. 934).

Also on December 23, Plaintiff saw Dr. Adlaon for her bipolar disorder, with symptoms of insomnia, flight of ideas and racing thoughts, as well as depressive disorder. Plaintiff's medications were refilled, and she was advised to be compliant with her medications and to watch for any signs indicating any adverse reactions. (Tr. 952).

On December 29, 2014, Dr. Bruce Lochner, Ph.D., a non-examining medical consultant, performed a Psychiatric Review Technique, and a Mental RFC Assessment, where he opined that Plaintiff could perform simple, and some more complex, tasks with routine

supervision; could adapt to a work environment; could relate to others on a superficial work basis; and should avoid direct contact with the public.  (Tr. 445, 449, 458, 462).

On January 28, 2015, Plaintiff visited Dr. Adlaon with symptoms of bipolar and depressive disorder.  (Tr. 950).  Plaintiff was encouraged to utilize her coping skills to overcome common stressors and to continue her antidepressant medication unless it caused increased depression.  She was also advised to try to control sudden outbursts of anger toward family and friends and to continue developing coping skills.  She was advised to be compliant with medication and to watch for any adverse side effects.  (Tr. 951).

On February 12, 2015, Plaintiff visited Express Care with complaints of low back pain and for medication refills.  (Tr. 1261).

On April 4, 2015, Dr. Larry Ressler, a non-examining medical consultant, performed a Physical RFC Assessment, where he affirmed Dr. Meites original RFC Assessment.  (Tr. 475, 490).

On April 21, 2015, Dr. Mary Rolison, Ph.D., a non-examining medical consultant, performed a Psychiatric Review Technique and a Mental RFC Assessment, wherein she determined that Plaintiff could perform simple, and some more complex, tasks with routine supervision; could adapt to a work environment; could relate to others on a superficial work basis; and should avoid direct contact with the public. (Tr. 473, 477. 488, 492).

On May 13, 2015, Plaintiff visited Express Care for a check-up and pain medication refills.  Her degenerative disc disease and anxiety were noted and treated conservatively.  (Tr. 1260).

On August 13, 2015, Plaintiff presented at Express Care for pain medication refills for her chronic pain. (Tr. 1259).

On October 19, 2015, Plaintiff presented at Express Care for pain medication refills for her chronic pain. Clinic notes indicate myalgia and anxiety. (Tr. 1258).

On November 19, 2015, Plaintiff presented at Express Care for a refill of her medications and examination of a ganglion cyst on her left hand. (Tr. 1244).

On November 23, 2015, Plaintiff presented at Healthy Connections for an initial visit with complaints of PTSD and depression. (Tr. 982). Clinic notes indicate that Plaintiff was in need of a referral to psychologist in order to get her medications. Plaintiff was positive for acid reflux symptoms and gastroparesis, crying spells, depression, mood swings and insomnia. (Tr. 982). Clinic notes also reveal that plaintiff was mildly obese. (Tr. 983). Plaintiff was assessed with PTSD, hypertension, social anxiety disorder, moderate depression, bipolar disorder, and gastroparesis. (Tr. 984). She was treated conservatively with medication and referred to a psychologist. (Tr. 984).

Plaintiff visited Healthy Connections on February 2, 2016, and saw Terri Barrada, APRN, for knee pain. (Tr. 986). Plaintiff's psychiatric test was negative. (Tr. 986). Plaintiff reported using a cane to prevent falls. (Tr. 986). Plaintiff also complained of back pain and stated that she was seeing Dr. Willis for shoulder and back pain. (Tr. 986). Progress notes indicate that Plaintiff was mildly obese. She was assessed with knee pain, chronic low back pain, hyperlipidemia, upper back pain, and hypertension. (Tr. 987).

On that same day, Plaintiff underwent a series of x-rays. An x-ray of Plaintiff's thoracic spine showed no acute post-traumatic or pathologic thoracic spine plain film readings and mild

14

to moderate degenerative changes as described above. (Tr. 993). An x-ray of Plaintiff's left knee showed minimal osteoarthritic degenerative left knee findings and soft tissue ossification of the origin of the medial collateral ligament complex which may represent a source pain. (Tr. 994). An x-ray of Plaintiff's lumbar spine showed lumbar spasm/strain but no acute post traumatic or pathologic skeletal findings. (Tr. 995). An x-ray of Plaintiff's right knee showed minimal osteoarthritic degenerative right knee findings. (Tr. 996).

On February 17, 2016, Plaintiff was seen at Express Care where she was given refills on her medications for her chronic pain, anxiety and depression. (Tr. 1243).

Plaintiff presented at Healthy Connections on March 22, 2016, with painful episodes of GERD, occurring several times a day. (Tr. 989). Clinic notes indicate that Plaintiff currently smoked cigarettes and previously smoked marijuana on a regular basis. (Tr. 989-990). Clinic notes highlight Plaintiff's moderate obesity. (Tr. 990). Plaintiff was assessed with GERD, gastroparesis, lower limb edema, and diffuse arthralgia and treated conservatively. (Tr. 991). A chest x-ray showed slightly limited quality study secondary to large body habitus but no significant abnormality was demonstrated. (Tr. 1002).

On April 7, 2016, Plaintiff visited Healthy Connections with complaints of blood in her stool, abdomen pain and nausea. (Tr. 1003). Plaintiff was assessed with bloody stool, diverticulitis of the colon and vitamin D deficiency. (Tr. 1005). Office notes indicate that Plaintiff was a smoker and that she was obese. (Tr. 1005-1006).

On May 16, 2016, Plaintiff was seen at Express Care for medication refills for her chronic pain. (Tr. 1239).

On August 17, 2016, Plaintiff was seen at Express Care for medication refills and complaints of pain in her low back. (Tr. 1237).

On October 25, 2016, Plaintiff visited Healthy Connections for a follow up after her colonoscopy. (Tr. 1223). Clinic notes indicate Plaintiff was still smoking. (Tr. 1224). Plaintiff's physical and psychiatric examinations were normal. (Tr. 1224-1225). Plaintiff was assessed with hyperlipidemia and IBS, and was counseled on diet and exercise for her obesity. (Tr. 1225). Her depression screen was negative. (Tr. 1227).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted

at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff makes the following arguments on appeal: 1) that the ALJ erred in her Step Two analysis; 2); that the ALJ erred in her RFC determination; and 3) that the ALJ erred in relying on a vocational expert in making a step five determination. (Doc. 12, pp. 2-9).

17

### A.   Plaintiff's Impairments:

Plaintiff argues that the ALJ erred at Step Two by failing to find that Plaintiff's knee condition was medically determinable and met severity.   At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing she suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed Plaintiff's knee impairment in the decision, and clearly stated that she considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 404.1545(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 404.1523(c) (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

With regard to Plaintiff's allegation of GERD and gastroparesis, that ALJ did not include these conditions in her discussion of non-severe medical impairments, nor did she include every medical record addressing those issues. While it would have been preferable for the ALJ to have specifically mentioned Plaintiff's alleged impairments of GERD and gastroparesis and the supporting medical records, an ALJ's failure to discuss an impairment at step two was a mere deficiency in opinion-writing technique which does not require remand and has no bearing on the outcome. Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008). Moreover, there is no credible evidence on the record that Plaintiff's GERD or gastroparesis was severe, and the physicians of record did not limit her in any way because of those conditions.  See Johnston v. Apfel, 210 F.3d 870, 874–75 (8th Cir. 2000) (holding that inconsistencies between record evidence and claimant's subjective allegations of disabling limitations supported ALJ's finding a non-severe impairment).

Based on a review of the record, the Court finds the ALJ did not error in setting forth Plaintiff's severe impairments during the relevant time period.

**B.**    **Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in

the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In addressing Plaintiff's credibility, the ALJ noted Plaintiff's statements and testimony that her impairments made it difficult for her to perform daily tasks; that she had to lie down two to three hours a day; that she no longer participated in social events; that she had difficulty being around other people; that she had severe pain in her neck, shoulders, and low back; that she had problems sitting, standing, and walking for extended periods; that she was taking hydrocodone for pain as well as medication to treat her mental conditions; and that while she had not been prescribed an assistive device, she used a cane. (Tr. 50, 55, 190, 214-215, 408, 413, 418, 420, 422, 779-783).

In Plaintiff's most recent October 28, 2014 Function Report, she stated that she cared for the family pet; that she had some issues with personal care; that she did not need reminders for personal care; that she prepared simple meals; that she could load the dishwasher; that she could sit and fold clothes; that she could shop in stores for food; and that she could manage her finances. (Tr. 762-764). Plaintiff reported that her hobbies included watching television, reading, and communicating via her cell phone. (Tr. 765). She reported going to church when she was able, spending time on social media daily, and going to the store regularly. (Tr. 765). Plaintiff also reported being able to walk only thirty minutes before needing to stop and rest for ten to fifteen minutes. (Tr. 766).

On October 14, 2014, Plaintiff's mother, Willa D. Voisin, completed a Third Party Function Report, wherein she noted that Plaintiff would prepare simple meals, but otherwise

did very little during the day. (Tr. 744). She stated that Plaintiff's daughter took care of the family pet. She reported that Plaintiff's only problems with personal care were that she would often wear a robe, that she wore her hair pulled back in a ponytail, and that she did not bathe daily. (Tr. 745). Plaintiff did not need reminders for personal grooming or to take her medicine. Plaintiff did some laundry and could ride in the car to the store to shop for groceries. (Tr. 746-747). Plaintiff could manage her finances, and her main hobby was watching television. (Tr. 747-748). She communicated with family regularly via telephone. (Tr. 748). Plaintiff had trouble getting along with family members. She could only pay attention for a very short time, but could follow spoken instructions fairly well. (Tr. 749).

With respect to Plaintiff's physical impairments of obesity and degenerative disc disease, the record demonstrates that Plaintiff was treated conservatively for these conditions and that Plaintiff was not a candidate for spine surgery. (Tr. 297, 877, 885, 891, 984, 987, 1005-1006, 1225, 1260, 1262). See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). Furthermore, impairments that can be controlled with treatment or medication are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment controllable with treatment or medication is not considered disabling).

With regard to Plaintiff's mental impairments, Plaintiff was also treated conservatively with medication. On one occasion, during a December 23, 2014 Mental Status Examination by Dr. Theresa Horton, Ph.D., Plaintiff reported being treated at Atoka Counseling since "earlier [that] year," and also having been seen at Hartsell Psychological for several months prior to the exam. (Tr. 932). However, there are no counseling or inpatient mental health treatment records in the case other than Plaintiff's visits to her primary care physicians, who

21

prescribed medication for her mental impairments.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability).

Although it is clear that Plaintiff suffers some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.     ALJ's RFC Determination

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical

records when she determined Plaintiff could perform light work with limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

With regard to Plaintiff's mental impairments, Plaintiff specifically alleges that the ALJ failed to adequately consider all of the medical evidence regarding Plaintiff's mental impairments and failed to properly weigh the opinions of Drs. Horton, Spray, Trow, and Adlaon. After review, the Court finds that the ALJ did not err in weighing the opinions of Drs. Horton and Spray. The ALJ specifically found that Dr. Spray's Medical Source Statement, as well as Dr. Horton's two consultative examinations, were inconsistent with the record as a whole, and thus, declined to give controlling weight to these medical professionals' opinions for good and well-supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion.").[3]

---

[3] While Plaintiff argues that the ALJ failed "to consider the entire body of treatment notes from Dr. Trow," after reviewing the 1308-page transcript, the Court did not see an opinion from Dr. Trow, nor does Plaintiff cite to any medical opinion completed by Dr. Trow. Rather, the records cited to in Plaintiff's brief were authored by Dr. Adlaon, Dr. Spray, Dr. Willis, and Dr. Horton. (Doc. 12, p. 2). The Court notes, however, that were three progress notes cited to in Plaintiff's brief that could potentially have been authored by Dr. Trow, but they were simply progress notes and not full mental health examinations. (Tr. 375-377, 379).

Furthermore, despite Plaintiff's argument that the ALJ failed to properly consider the entire body of evidence regarding Plaintiff's mental health treatment, the ALJ need not discuss every piece of medical evidence of record.  See Renstrom v. Astrue, 680 F.3d 1057, 1064–65 (8th Cir. 2012) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

The Court also notes that the ALJ took Plaintiff's obesity into account when determining Plaintiff's RFC.  Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

Upon careful review of the record, the Court finds that Plaintiff's arguments are without merit and that substantial evidence supports the ALJ's RFC determination.

### D.    Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a marker and as a cleaner/housekeeper.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.      Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of July, 2018.


/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE